**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**TAMMY RIZZOLO DANISE**

     **Plaintiff,**

v.

**SAXON MORTGAGE SERVICES, INC., OCWEN LOAN SERVICING, LLC, and JOHN DOE 1-10,**

     **Defendants.**

**Civil Action No. 15-6062 (JLL) (JAD)**

**OPINION**

JOSEPH A. DICKSON, U.S.M.J.

     This matter comes before the Court upon Plaintiff Tammy Rizzolo Danise's ("Plaintiff") Motion for Leave to File an Amended Complaint pursuant to Federal Rule of Civil Procedure 15 (the "Motion to Amend"). (ECF No. 24). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiff's Motion to Amend is **GRANTED.**

     **I.**     **BACKGROUND AND PROCEDURAL HISTORY**

     In 2006, Plaintiff financed her home and accepted a mortgage loan in the amount of six hundred thousand dollars. (Prop. Am. Compl. ¶ 60, ECF No. 24-3). In 2008, Plaintiff struggled to pay her mortgage and, as a result, she contacted Defendants Saxon Mortgage Services, Inc. ("Defendant Saxon") and/or Ocwen Loan Servicing, LLC ("Defendant Ocwen") for a loan modification. (Id. ¶ 59, 61). Defendant Saxon directed plaintiff to submit financial information. (Id. ¶ 61). In October 2008, Defendant Saxon declined Plaintiff's loan modification request. (Id. ¶ 62). Plaintiff missed several payments thereafter. (Id. ¶ 62). On May 15, 2009, Defendant Saxon

contacted Plaintiff and offered her a "Home Affordable Modification Trial Period Plan" ("TPP"). (Id. ¶ 63). "Saxon stated that if she accepted the TPP Contract offer, she was to sign and return two copies to Saxon. If Saxon confirmed that she qualified for the TPP Contract, it would countersign the TPP Contract and return a fully executed copy to her." (Id. ¶ 63). However, if Plaintiff did not qualify for the TPP, "Saxon would provide her with a written notice that she did not qualify for it." (Id. ¶ 63). Plaintiff executed and returned the TPP Contract offer to Defendant Saxon. Soon after, Plaintiff received a copy of the TPP Contract countersigned by Saxon "confirming that she qualified for TPP". (Id. ¶ 63).

According to Plaintiff, Defendant Saxon represented that if Plaintiff "fulfilled her obligations under the TPP and her representations" continued to be true during the trial period, then her loan payments would be permanently modified. (Id. ¶ 65). The TPP required that plaintiff make "three trial period" modified payments from June 2009 to August 2009. (Id. ¶ 66). Saxon also represented that the modified payments were "an estimate of what her payment would be if it permanently modified the payments under" the United States Department of the Treasury's Home Affordable Modification Program ('HAMP'). (Id. ¶ 65). Although Defendant Saxon did not contact Plaintiff after the three-month trial period, Plaintiff continued to make payments in the modified amount. (Id. ¶ 67). On April 6, 2010, Defendant Saxon sent Plaintiff a letter denying her a permanent loan modification. (Id. ¶ 68).

On May 29, 2015, Plaintiff initiated the action against Defendants Saxon and Ocwen, and several fictitious defendants, (collectively "Defendants"), in the Superior Court of New Jersey, Morris County, Law Division. (Compl., ECF No. 1). Plaintiff alleged that, "Defendant Saxon breached its contractual obligation by failing to modify, on a permanent basis, [P]laintiff's loan or in the alternative by failing to notify Plaintiff in a timely manner, that is four months after the

2

effective date of the TPP, that Plaintiff <u>was not</u> eligible for a loan modification." (<u>Id.</u> ¶ 11) (emphasis in original). Plaintiff maintained that as a result of Defendant Saxon's alleged breach, Plaintiff suffered damages including "increased monthly mortgage payments, higher interest, higher principal balances, and deterrence from seeking other remedies to address Plaintiff's default, and/or unaffordable mortgage payments, damages to Plaintiff's credit, and other damages". (<u>Id.</u> ¶ 12).

Plaintiff pleads in the alternative that Defendant Saxon's failure to timely notify Plaintiff regarding her ineligibility for the permanent loan modification also resulted in damages including "falling further . . . behind on her monthly mortgage payments, increased indebtedness owed by Plaintiff on account of her mortgage obligation, paying increased interest, damages to Plaintiff's credit, deterrence from seeking any other remedies to address Plaintiff's default and other damages". (<u>Id.</u> ¶ 13).

Plaintiff's original Complaint sought "a judgment declaring the acts and practices of Defendants complained of [ ] to constitute a Breach of Contract and a Breach of the Covenant of Good Faith and Fair Dealing, as well as a declaration that the Defendants are required by the Doctrine of Promissory Estoppel to offer permanent loan modification to Plaintiff on the terms and promises in Plaintiff's Trial Period Plan". (Compl. at 15 ¶ 13, ECF No. 1).

Plaintiff also alleged that Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 <u>et seq</u>. (<u>Id.</u> at 16-20). Plaintiff alleged that Defendants engaged in "a shocking array of unfair, deceptive, and misleading practices and breach of duty" because they "promis[ed]" a permanent loan modification, which they did not intend to grant, while "continu[ing] to demand and accept monthly mortgage payments." (<u>Id.</u> at 16, ¶ 2). Additionally, Plaintiff alleged that Defendants acted in "bad faith" in order to "profit at the expense of distressed homeowners, such

3

as Plaintiff." (Id. at 16-17, ¶¶ 3, 4). According to Plaintiff, Defendants executed a Servicer Participation Agreement ("SPA") within 2009, in which they covenanted to perform all services in compliance with the applicable federal, state, and local laws and with a high professional standard of care. (Id. at 17-18, ¶¶ 6, 7). "The SPA requires a participating servicer to follow all guidelines, procedures, and directives issued as part of 'HAMP'. As participating services, Defendants are required to evaluate all loans that are sixty (60) or more days delinquent or appear to be at risk of eminent default in order to determine which loans meet the 'HAMP' eligibility criteria." (Id. at 18, ¶ 8). According to Plaintiff, the SPA also required Defendants to "pre-qualify borrowers for eligibility for a permanent 'HAMP' modification before entering into a TPP Contract." (Id. ¶ 9). Plaintiff maintains that Defendants were, therefore, legally bound to comply with the HAMP guidelines. (Id. at 19, ¶ 10).

Finally, Plaintiff alleged that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Id. at 21). Plaintiff maintains that Defendant Ocwen violated subsection (f)(1) "by attempting to collect amounts from Plaintiff that is not expressly authorized by the agreement creating the debt or permitted by law." (Id. ¶ 4). Moreover, Plaintiff alleges that both Defendants violated 15 U.S.C. § 1692(e)(2)(A) "by sending Plaintiff communications that represented the amount of legal status of Plaintiff's mortgage debt." (Id. ¶ 5).

On August 7, 2015, Defendant Ocwen removed the case to this Court contending that this Court has original subject matter jurisdiction on the basis of federal question and that removal was, therefore, appropriate pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Notice of Removal, ECF No. 1). Defendant Ocwen subsequently filed an Answer on August 20, 2015. (Answer, ECF No. 4). On December 8, 2015, the Honorable Jose L. Linares, U.S.D.J., entered a Notice of Call for

Dismissal pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 5). Therein, Judge Linares stated that the "action will be dismissed on Friday, December 18, 2015 at 10:00 a.m., for failure to effect service of the summons and complaint upon defendant, Saxon Mortgage Services, Inc., within 120 days of the filing of the complaint unless you establish that service was effected within said 120 days, by filing proof of service with the Clerk of the Court before the return date of this notice." (Id. at 1) (emphasis removed). On December 16, 2015, Plaintiff submitted a request for an extension of time to serve Defendant Saxon, which Judge Linares granted on December 17, 2015. (ECF Nos. 7, 8).

On February 5, 2015, Plaintiff filed the instant Motion to Amend pursuant to Federal Rule of Civil Procedure 15 to add additional factual and class allegations against Defendants. (See generally ECF No. 24). "Plaintiff's class allegations against Saxon and Ocwen assert that they implemented a scheme to corrupt the United States Department of the Treasury's Home Affordable Modification Program ('HAMP') loan modification program, to boost their profits at the expense of borrowers to whom they denied relief from unaffordable mortgage payments through promised permanent loan modifications they did not intend to grant." (Pl. Br. at 1, ECF No. 24-1). Plaintiff states that her amendment is based on the premise that "[s]ince the filing of her Original Complaint, Plaintiff has learned that Defendants' conduct was not limited to her, but was part of a scheme that victimized all New Jersey borrowers that entered into the substantially identical agreements with Saxon and its successor in interest, Ocwen." (Id. at 2). Plaintiff seeks to represent the following class and sub-class:

> a. All New Jersey homeowners whose mortgage loans have been serviced by Defendants and who, since April 13, 2009, (i) have entered into a TPP Contract with Defendants and made all payments as required by their TPP Contract and complied with Defendants' requests for documentation, and (ii) have not received a permanent Home Affordable Modification.

5

   b. All New Jersey homeowners whose mortgage loans have been
serviced by Defendants and who, since April 13, 2009, (i) have
entered into a TPP Contract with Defendants and made all
payments as required by their TPP Contract and complied with
Defendants' requests for documentation, (ii) and within one year
of the filing of the Complaint were subjected to false, deceptive,
unfair and unconscionable demands for payment for debts that
were not properly due and owing or for amounts that were not
properly due and owing pursuant to the alleged debts in violation
of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et
seq.*("Fair Debt Collection Sub-Class").

(Prop. Am. Compl. ¶ 84, ECF No. 24-3).

Plaintiff's proposed Amended Complaint "also adds allegations concerning Saxon's
ultimate parent corporation, Morgan Stanley," which Plaintiff alleges "had substantial
responsibilities for Saxon's loan serving and loss mitigation business practices, and which the
Federal Reserve System Board of Governors ('Federal Reserve') found had been deficient in its
management of [ ] Saxon." (Pl. Br. at 3, ECF No. 24-1).

On February 29, 2016, Defendant Saxon filed an Opposition to Plaintiff's Motion to
Amend. (See generally Def. Saxon's Opp'n Br., ECF No. 25). Defendant Saxon argues that
Plaintiff's motion to amend should be denied on the basis of undue delay and futility. (Id.).
Defendant Ocwen also filed an Opposition to Plaintiff's Motion to Amend on the same day,
arguing that the claims should be denied on prejudice and futility grounds. (See generally Def.
Ocwen's Opp'n Br., ECF No. 26).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party
to amend its pleadings after obtaining the Court's leave or the written consent of its adversary.
Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ.
P. 15(a)(2); see also Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the

6

court to look favorably on requests to amend."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No. 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F. 3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Defendants argue that Plaintiff's Motion to Amend should be denied on the basis of undue prejudice and delay. (Def. Saxon's Opp'n Br. at 8, ECF No. 25); Def. Ocwen's Opp'n Br. at 13-15, ECF No. 26). Unfair prejudice is the most common factor used by courts to deny leave to amend. Unfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant. Delay alone will not justify denying a motion to amend. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (holding that mere passage of time does not require that a motion to amend a complaint

7

be denied on grounds of delay). Only where delay becomes "'undue,' placing an unwarranted burden on the court, or ... 'prejudicial,' placing an unfair burden on the opposing party," will denial of a motion to amend is appropriate. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay, as well as the question of bad faith, requires that [the Court] focus on the plaintiff['s] motives for not amending [its] complaint to assert [the] claim[s] earlier; the issue of prejudice requires that [the Court] focus on the effect on the [defendant]."). Delay may become undue when there has been previous opportunity to amend the complaint. See Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (finding that a three-year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend). In such cases, the Court must focus on the moving party's reasons for not amending the pleading sooner. USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004).

Moreover, both Defendants argue that Plaintiff's proposed amendment to bring a class claim is futile. (Def. Saxon's in Opp'n Br., ECF No. 25; Def. Ocwen's Opp'n Br., ECF No. 26). A proposed amendment "'is futile if the amended complaint would not survive a motion to dismiss.'" County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544 (U.S. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendments are futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *45 (D.N.J. Feb. 11, 2013) (internal citations omitted).

### III.   DISCUSSION

#### a.   Defendant Saxon

Plaintiff alleges the following causes of action against Defendant Saxon: breach of contract, breach of implied covenant of good faith and fair dealings, promissory estoppel, and violation of the New Jersey Consumer Fraud Act ("NJCFA").[1]  (Prop. Am. Compl., ECF No. 24-3).  As noted above, Defendant Saxon opposes Plaintiff's Motion to Amend on the basis of undue delay and futility.  (See generally Def. Saxon's Opp'n Br., ECF No. 25).  The Court shall address each of Defendant Saxon's arguments in turn below.

---

[1] Notably, Plaintiff's original Complaint maintained a cause of action against Defendant Saxon for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Compl. at 21, ECF No. 1). This allegation has, however, been modified in Plaintiff's proposed Amended Complaint and is now pled against Defendant Ocwen only. (Prop. Am. Compl. ¶¶ 134-140, ECF No. 24-3).

### i. Undue Delay

Defendant Saxon first argues that Plaintiff's motion for leave to amend should be denied for undue delay. (Def. Saxon's Opp'n Br. at 8, ECF No. 25). Delay may become undue when there has been previous opportunity to amend the complaint. See Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (finding that a three-year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend). In such cases, the Court must focus on the moving party's reasons for not amending the pleading sooner. USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004). Moreover, there is "no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006). Delay alone does not justify denying a motion to amend. Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

Defendant Saxon asserts that Plaintiff lacked diligence in moving to amend her Complaint as no new facts have been uncovered and no new evidence has been revealed. (Def. Saxon's Opp'n Br. at 8, ECF No. 25). The question of whether there was undue delay requires courts to focus on the movant's reason for not amending sooner. Cureton, 252 F.3d at 273. As noted above, Plaintiff maintains that she only became aware of the Defendants "scheme" after her Complaint was filed. (Pl. Br. at 2, ECF No. 24-1). Plaintiff was, therefore, unable to amend sooner. Moreover, although the case was removed one year ago, it is still in its infancy; the pleadings are still at issue, the parties have not engaged in discovery, and no schedule has been set. Given Federal Rule of Civil Procedure 15's liberal standard, this Court finds that undue delay does not exist here.

### ii.  Futility

Defendant Saxon argues that Plaintiff's motion to amend should be denied on futility grounds. (Def. Saxon's Opp'n Br. at 9, ECF No. 25). Defendant Saxon posits that "[t]he Court must reject Plaintiff's efforts to apply her fact pattern to the supposed claims of hundreds or thousands of additional borrowers, as such claims are barred by the expiration of the applicable limitations period." (Id.). Additionally, Defendant Saxon argues that Plaintiff's class allegations do not relate back pursuant to Federal Rule 15(c) or its counterpart in New Jersey Rule of Court 4:9-3. (Id. at 13).

Both Plaintiff and Defendant Saxon agree that the limitations period for each of Plaintiff's claims is six years from the date of accrual. (Pl.'s Reply Br. to Def. Saxon's Opp'n at 4, ECF No. 27; Def. Saxon's Opp'n Br. at 9, ECF No. 25). A cause of action accrues on "the date on which the right to institute and maintain a suit first arose." Rosenau v. New Brunswick, 51 N.J. 130 (1968); see also William A. Graham Co. v. Haughey, 646 F.3d 138, 147 (3d Cir. 2011) ("[a]ccrual . . . occurs once events satisfying all the elements of a cause of action have taken place."). This Court shall discuss each of Defendant Saxon's arguments regarding futility in turn below.

### 1.  Judicial Estoppel

Defendant Saxon argues that "[t]here is no dispute that by the time Plaintiff sought to bring class claims in January 2016, the six-year period of limitations had run for Plaintiff's claims against Saxon." (Def. Saxon's Opp'n Br. at 9, ECF No. 25). Defendant Saxon argues that because Plaintiff previously conceded to the expiration of the limitations period and obtained relief in the form of an extension of time to serve the Complaint, she is now estopped from claiming the limitations period has not expired. (Id.).

On December 16, 2015, Plaintiff requested additional time to serve Defendant Saxon, arguing that the Court should exercise its discretion, which "is especially warranted as Plaintiff would be severely prejudiced by a dismissal as it would occur after expiration of the six year statute of limitations governing her common law and statutory causes of action, thereby barring her claims against Saxon and Morgan Stanley." (ECF No. 7, at 2). Defendant Saxon now argues that "[h]aving obtained relief based on the premise that the limitations period has expired already, Plaintiff is now estopped from claiming that the limitations period has not expired. (Def. Saxon's Opp'n Br. at 9, ECF No. 25) (emphasis in original).

Judicial estoppel prevents a party from asserting inconsistent arguments at different phases of the litigation. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of judicial estoppel is not to eliminate all inconsistencies, but instead to prevent litigants from "playing fast and loose with courts." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (citing Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953)). The Supreme Court has set forth three factors for determining whether judicial estoppel is applicable:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second . . . whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,' . . . [and] third . . . whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750.

Plaintiff argues that the extension letter does not justify the application of judicial estoppel. (Pl.'s Reply Br. to Def. Saxon's Opp'n at 7, ECF No. 27). Plaintiff argues that under the New Jersey discovery rule, her current position is not "clearly inconsistent" with her December 16, 2015

12

position.  Moreover, Plaintiff argues that "there was no adjudication by the Court concerning the limitations period applicable to Plaintiff's claims.  The determination of good cause did not require an adjudication of the limitations period and the Court made no findings in that respect."  (Id. at 8).  Finally, Plaintiff argues that Defendant Saxon was not prejudiced as a result of Plaintiff's statement.  (Id.).

This Court finds judicial estoppel inapplicable here.  Notably, Plaintiff's request for an extension of time was primarily based on Plaintiff's inability to serve Defendant Saxon after what she described as utilizing "diligent effort[s]".  (ECF No. 7, at 2).  Moreover, Plaintiff's request for an extension of time based on this Court's discretion was an argument in the alternative.  Judge Linares' Order granting Plaintiff's request does not specifically note that this Court was "successfully persuaded" by Plaintiff's statute of limitations argument or that the Court's decision was predicated on that argument.  At the very least, the second factor for determining whether judicial estoppel is applicable has not been satisfied.  The Court need not then consider the first or third factors.  As stated above, judicial estoppel is not applicable and, therefore, Plaintiff's proposed Amended Complaint is not futile on these grounds.

## 2.  The Statute of Limitations

Next, Defendant Saxon argues that the statute of limitations on Plaintiff's claims expired before Plaintiff sought leave to amend the Complaint.  (Def. Saxon's Opp'n Br. at 10, ECF No. 25).  "Plaintiff alleges that Saxon breached the TPP by not providing her a modification at the conclusion of her trial period payments, i.e., September 1, 2009.  Accordingly, under her own theory, Plaintiff's contractual cause of action arose on September 1, 2009."  (Id. at 11) (internal citations and quotations omitted).  Defendant Saxon also argues that Plaintiff's NJCFA claim arose prior to September 1, 2009, since Plaintiff alleges that Defendant Saxon never intended to comply

13

with the TPP.  (Id.).  Defendant Saxon argues that "because Plaintiff defines compliance with the TPP as awarding a permanent modification 'at the conclusion of her trial period payments' in August 2008, the latest date that Plaintiff's NJCFA claim may have begun to accrue was September 1, 2009."  (Id.) (citations omitted) (emphasis in original).

Thus, according to Defendant Saxon, the statute of limitations for all Plaintiff's claims against it expired on September 2, 2015.  (Id.).  Defendant Saxon argues that as a result, "[t]he claims of any class for which Plaintiff might be an adequate representative can be timely only if brought during the limitations period applicable to Plaintiff's claims.  The claims at issue here were not brought in time: the earliest date by which Plaintiff sought to pursue class claims—*i.e.*, claims on behalf of new plaintiffs—was January 8, 2016, well past the expiration of the limitations period."  (Id. at 12) (internal citations omitted).

Plaintiff argues that her claims are timely pursuant to the New Jersey discovery rule.  (Pl.'s Reply Br. to Def. Saxon's Opp'n at 4, ECF No. 27).  Plaintiff asserts that the statute of limitations began to accrue on April 6, 2010, the date which Defendant Saxon sent Plaintiff a letter notifying her that she had been denied a permanent loan modification.  (Id. at 5; Prop. Am. Compl. ¶ 68, ECF No. 24-3).  Plaintiff argues that it was not until then that she discovered, or could have discovered, that she may have a claim against Defendant Saxon.  (Pl.'s Reply Br. to Def. Saxon's Opp'n at 5, ECF No. 27).  Consequently, Plaintiff maintains that the statute of limitations ran in April 2016, months after she moved to amend her Complaint.  (Id.).

Generally speaking, "the discovery rule 'tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so' and 'is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual regardless of whether or not the injured party has any idea what has happened to him.'"  Stephens v. Clash, 796

14

F.3d 281, 284 (3d Cir. 2015) (quoting <u>William A. Graham Co. v. Haughey (Graham II )</u>, 646 F.3d 138, 141, 150 (3d Cir. 2011)).  Under the discovery rule, the accrual date for a cause of action "is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff <u>discovers</u> that he or she has been injured."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 (3d Cir. 1994) (emphasis in original).  Upon discovery of the injury, "the statutory limitations period begins to run and the plaintiff is afforded the full limitations period, starting from the point of claim accrual, in which to file his or her claim".  <u>Id.</u> at 1386.

Based on the record currently before this Court, the discovery rule applies. According to Plaintiff, she "submitted all the required documentation and timely made all payments required by the TPP.  The agreement required three trial period payments commencing in June 2009 and continuing in July and August 2009.  Her monthly interest payment and escrow payments on the original interest only loan had been $4,997.73.  The monthly TPP trial period payment, including escrow, was lowered to $2,874.39."  (Prop. Am. Compl. ¶ 66, ECF No. 24-3).  Defendant Saxon did not, however, contact Plaintiff upon completion of the three-month trial period and as such, Plaintiff continued to make the modified monthly payments.  (<u>Id.</u> ¶ 67).

It was, therefore, reasonable for Plaintiff to presume her loan had been permanently modified.  As a result, Plaintiff did not discover the alleged breach until April 6, 2010.  This Court finds that equity dictates the application of the discovery rule.  Defendant Saxon has not set forth any argument regarding Plaintiff's lack of reasonable diligence and the Court will not speculate as to such diligence.  The accrual of Plaintiff's cause of action was delayed until she discovered her monthly payments were not permanently modified, i.e. "April 6, 2010 – eight months after the

conclusion of the trial period under the TPP Contract." (Id. ¶ 68). Plaintiff's proposed Amended Complaint is not time barred by the applicable statute of limitations and is not, therefore, futile.[2]

The Court notes that it is not making a definitive ruling with regards to the statute of limitations. Defendant Saxon is not prevented from raising this argument if further discovery reveals additional facts that impacts this analysis.

### b. **Defendant Ocwen**

Defendant Ocwen opposed Plaintiff's Motion to Amend on February 29, 2016, arguing that "Plaintiff has no viable claim against Ocwen. (Def. Ocwen's Opp'n Br. at 1, ECF No. 26). Defendant Ocwen further argues that Plaintiff's proposed Amended Complaint fails to state a claim upon which relief can be granted, rendering the proposed amendments futile. (Id. at 3-13). Defendant Ocwen also argues that Plaintiff's Motion to Amend should be denied because the proposed amendments unduly prejudice it. (Id. at 13). Finally, Defendant Ocwen argues that the proposed class does not meet the requirements in Federal Rule of Civil Procedure 23. (Id. at 15-19). This Court shall address each of these arguments in turn below.


### i.  **Futility**

Defendant Ocwen argues that Plaintiff's Motion to Amend should be denied on futility grounds because Plaintiff's claims for breach of contract, breach of covenant of good-faith and fair dealing, promissory estoppel, and NJCFA all fail to state a claim against it. (Def. Ocwen's Opp'n Br. at 3-8, ECF No. 26). Defendant Ocwen's argument is premised on the fact that it was not a party to the TPP and thus, bears no liability as an unaffiliated mortgage assignee. (Id. at 4).

---

[2] Given this Court's finding that the discovery rule applies, the Court need not address the parties' arguments regarding relation back pursuant to Federal Rule of Civil Procedure 15(c)(1)(C).

Defendant Ocwen also argues that Plaintiff's FDCPA claim fails as a matter of law because the allegations are barred under the doctrine of *res judicata*. (Def. Ocwen's Opp'n Br. at 10-13, ECF No. 19).

In response, Plaintiff alleges that Defendant Ocwen bears liability for Defendant Saxon's breach of the TPP pursuant to an asset purchase agreement between the two defendants in April 2012. (Pl.'s Reply Br. to Def. Ocwen's Opp'n at 2-4, ECF No. 28). Plaintiff further argues that "Defendant Ocwen's opposition to Plaintiff's Motion for Leave to Amend is the motion to dismiss it elected not to file in response to Plaintiff's original complaint." (Id. at 1). This Court agrees.

Defendant Ocwen's arguments regarding futility are outside the bounds of the present motion and are more suitable for a motion to dismiss. Although the Court considers whether an amendment is futile based on whether it would survive a motion to dismiss, see Janiszewski, 351 F. App'x 662, the Court must consider whether the amendment itself is futile, not the claims in the original Complaint. Plaintiff's original Complaint alleges the same causes of action against Defendant Ocwen as the proposed Amended Complaint: breach of contract, breach of implied covenant of good faith and fair dealings, promissory estoppel, violation of the NJCFA, and violation of the FDCPA. (Compl. at 12-22, ECF No. 1; Prop. Am. Compl. at 31-41, ECF No. 24-3). Defendant Ocwen Answered Plaintiff's Complaint on August 20, 2015 and did not move to dismiss those claims. (Answer, ECF No. 4). To require Plaintiff, at this stage in the litigation, to remove those claims from the Amended Complaint would ignore the well-established rules of pleadings and motion practice. See Federal Rules of Civil Procedure 8, 12, 15. Any allegations included in Plaintiff's original complaint are not reviewable in the context of this motion as to Defendant Ocwen given its procedural history. This Court does not, therefore, find that Plaintiff's

proposed amendments are futile because of Plaintiff's alleged failure to state a claim upon which relief can be granted.

### ii. Unfair Prejudice

Defendant Ocwen also argues that it will be prejudiced if Plaintiff's Motion to Amend is granted. (Def. Ocwen's Opp'n Br. at 13-15, ECF No. 26). Defendant Ocwen maintains that Plaintiff's claims are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and "permitting Plaintiff's class allegations to go forward against Ocwen would require Ocwen to incur the substantial costs of pursuing voluminous and time consuming discovery to defend Plaintiff's claims and would unnecessarily delay the resolution of this matter." (Id. at 14).

It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823-24 (3d Cir. 1978) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971)). The issue of prejudice requires the Court to "focus on the hardship to the defendants if the amendment were permitted." Cureton, 252 F.3d at 273 (internal citation omitted). Specifically, this Court must consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." Id. None of these factors weigh in favor of denying Plaintiff's Motion to Amend on the basis of prejudice. As explained above, this case is in its early stages. The pleadings have yet to be settled and discovery has not yet commenced. Moreover, Defendant Ocwen Answered Plaintiff's original Complaint following the removal of this action, as noted above. Defendant Ocwen will not be prejudiced by defending the same claims Plaintiff alleged in her original Complaint.

c. **Class Action Claims**

i. **Private Right of Action Under HAMP**

Defendant Ocwen argues that Plaintiff's Motion to Amend should be denied because she

and the proposed class members, do not have a private right of action under the HAMP.  (Def.

Ocwen's Opp'n Br. at 15, ECF No. 26).

> As an initial matter, allegations as to Ocwen's participation in
> HAMP (Amended Compl. ¶¶ 32-45) are irrelevant because there is
> no question that even assuming Plaintiff's allegations in the
> Amended Complaint are true, Ocwen did not enter into the TPP with
> Plaintiff at issue in the instant litigation, and did not review Plaintiff
> for a HAMP modification.  Moreover, Plaintiff's allegations related
> to Ocwen's compliance with HAMP or requirements under HAMP
> are also irrelevant, because there is no private right of action to
> enforce compliance with HAMP.  Sinclair v. Citi Mortgage, Inc.,
> 519 Fed. App'x 737, 738 (3d Cir. 2013); In re O'Biso, 462 B.R. 147,
> 151 (D.N.J. 2011) (citing Stolba v. Wells Fargo & Co., No. 10-cv-
> 6014, 2011 WL 344407 * 3 (D.N.J. Aug. 8, 2011) and holding that
> there is no private right of action under HAMP).

(Id.).  Plaintiff argues that Defendant Ocwen "fails to address the state and federal case law

supporting enforcement of HAMP TPP agreements as common law contractual agreements and

state statutory consumer fraud claims.  Plaintiff's causes of action fall squarely within the case law

supporting enforceability of HAMP TPP agreements.  Plaintiff's claims do not depend upon a

private right of action under HAMP."  (Pl.'s Reply Br. to Def. Ocwen's Opp'n at 4, ECF No. 28).

As noted above, Plaintiff's proposed Amended Complaint maintains the same causes of

action against Defendant Ocwen as those in the original Complaint.  Defendant Ocwen cannot now

argue that Plaintiff's proposed Amended Complaint is futile after having Answered Plaintiff's

allegations at the outset of this action.  When considering whether to grant or deny a motion to

amend, this Court considers the amendment itself.  Defendant Ocwen's argument that Plaintiff's

Motion to Amend should be denied as Plaintiff and the proposed class do not have a private right

19

of action under HAMP <u>does not</u> address Plaintiff's proposed amendments. Plaintiff's Motion to Amend is not, therefore, futile on these grounds.

### ii. Federal Rule of Civil Procedure 23 Requirements

Finally, Defendant Ocwen argues that Plaintiff's Motion to Amend should be denied because it fails to meet the class certification requirements set forth in Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. (Def. Ocwen's Opp'n Br. at 16, ECF No. 26). Additionally, Defendant Ocwen argues that Plaintiff has not satisfied the requirements set forth in Federal Rule of Civil Procedure 23(b):

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

>**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>**(D)** the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b).

Plaintiff responded arguing that her proposed Amended Complaint "amply demonstrates grounds for her amendment to include class allegations, including meeting the standards under Rule 23. The paragraphs clearly set forth Plaintiff's satisfaction of the requirements for a common question[] of law and fact and the adequacy of Plaintiff as a class representative." (Pl.'s Reply Br. to Def. Ocwen's Opp'n at 8, ECF No. 28).

Federal Rule of Civil Procedure 23 governs the time to issue a class certification order: "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). Defendant Ocwen's argument is, therefore, misplaced. Defendant Ocwen's argument that Plaintiff failed to satisfy the Rule 23 requirements is not a basis to deny the instant Motion to Amend. Rather, that argument is more appropriate in an opposition to certify class. Plaintiff need not, at this early pleading stage, demonstrate that the requirements set forth in Federal Rule of Civil Procedure 23 have been satisfied. Plaintiff's proposed Amended Complaint is not futile on these grounds.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a), (ECF No. 24), is **GRANTED**.  An appropriate form of Order accompanies this Opinion.


**JOSEPH A. DICKSON, U.S.M.J.**

cc:     Hon. Jose L. Linares, U.S.D.J.