**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TAMMY RIZZOLO DANISE, on behalf of herself and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SAXON MORTGAGE SERVICES, INC., et al., <br><br> Defendants. | Civil Action No.: 15-06062 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of two motions to dismiss this action filed by Defendants Saxon Mortgage Services, Inc. ("Saxon") and Ocwen Loan Servicing, Inc. ("Ocwen") (collectively, "Defendants"). Plaintiff has opposed both motions, and Defendants have replied to Plaintiff's opposition. The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' motions to dismiss Plaintiff's Amended Complaint are hereby granted.

**I.    Background[1]**

Plaintiff Tammy Rizzolo Danise is a New Jersey citizen who resides in East Hanover. (FAC ¶ 1). Plaintiff alleges that she is the borrower on a first real estate loan originally serviced by Defendant Saxon, a Texas Corporation. (*Id.*). However, according to Plaintiff, in or about

---

[1] The facts as stated herein are taken as alleged in Plaintiff's First Amended Complaint. (ECF No. 36, "FAC"). For purposes of the pending motions to dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

April 2012, "Saxon largely ceased operations after selling substantially all its assets to Ocwen Financial Corporation," of which Defendant Ocwen is a subsidiary. (*Id.* ¶¶ 2-3). Plaintiff alleges that, as a result of the cessation of Saxon's operations and the sale to Ocwen, Plaintiff's mortgage loan and all accompanying rights, titles, interests and obligations were transferred to Defendant Ocwen. (*Id.* ¶ ). Ocwen, in turn, is a mortgage bank and home mortgage loan servicer with its principal place of business in Florida.

In 2008, Plaintiff was struggling to pay back her mortgage loan. (FAC ¶ 61). In or about August 2008, she contacted Saxon—her loan servicer at that time—for assistance in reducing her monthly payments. (*Id.*). According to Plaintiff, she complied with Saxon's requests to submit various financial information in order to devise a solution; however, in October 2008, Saxon denied Plaintiff's request to modify her loan, citing to Plaintiff's insufficient income. (*Id.* ¶¶ 61-62).

Thereafter, in February 2009, the United States Department of Treasury announced the Home Affordable Modification Program ("HAMP"). (*Id.* ¶¶ 5, 13, 63). According to Plaintiff, the HAMP program "lowers borrowers' monthly payments to 31 percent of their verified monthly gross income and converts interest-only and adjustable rate mortgage loans into fixed rate fully amortizing loans." (*Id.* ¶ 13). On May 15, 2009, Saxon offered Plaintiff the ability to participate in a HAMP Trial Period Plan ("TTP"). (*Id.* ¶ 63). Plaintiff claims that pursuant to the TPP, she was required to, among other things, make timely monthly trial period payments—payments which Saxon represented were an estimate of what Plaintiff's monthly mortgage payments would be if her mortgage loan was permanently modified under the HAMP. (*Id.* ¶¶ 64-65). Plaintiff alleges that Saxon "represented that if Plaintiff fulfilled her obligations under the TPP and her representations as to her hardship, residency, property ownership and income continued to be true

2

in all material respects during the trial period, Saxon would provide her with a permanent loan modification." (*Id.* ¶ 65).

Plaintiff alleges that despite complying with all of the terms and obligation of the TPP, Saxon denied Plaintiff a permanent loan modification by way of letter date April 6, 2010. (*Id.* ¶ 68). In support of its denial, Saxon advised Plaintiff that her loan had failed a Net Present Value ("NPV") calculation, which Plaintiff alleges was not grounds for denial under the TPP. (*Id.*). Although Saxon thereafter invited Plaintiff to apply for subsequent loan modifications, it consistently denied Plaintiff a permanent modification. (*Id.* ¶¶ 70-72).

Ultimately, Plaintiff was unable to make her monthly mortgage payments and, in September 2010, Saxon served Plaintiff with a foreclosure complaint. (*Id.* ¶ 73). Shortly thereafter, on October 7, 2010, Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Plaintiff alleges that as a result of the bankruptcy, she "was compelled to pay all arrears under the Saxon mortgage, including late charges, pre-petition attorneys' fees and costs, inspection fees and breach fees, added as charges under the terms of the mortgage in her Chapter 13 case." (*Id.*). The bankruptcy court issued Plaintiff an Order of Discharge in March 2015. (*Id.* ¶ 74).

On May 29, 2015, about three months after satisfying her bankruptcy plan, Plaintiff filed the instant lawsuit on behalf of herself and a putative class of similarly situated individuals in the Superior Court of New Jersey, Morris County. (ECF No. 1, ¶ 1). Defendants subsequently removed this action to the District Court on the grounds of federal question jurisdiction on August 7, 2015. (*Id.* ¶¶ 2-3). Plaintiff asserts claims against both Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel and violation of the New Jersey Consumer Fraud Act ("NJCFA") and asserts a claim against Defendant Ocwen

3

under the Fair Debt Collection Practices Act ("FDCPA").  (FAC at 31-39).  In summary, Plaintiff

alleges that she and the putative class members

> have been subject to and affected by a uniform course of conduct by Defendants that was
> designed to evade the requirements of HAMP and avoid permanent loan modifications in
> an effort to increase Defendants' income through, *inter alia*, maintaining high service fees
> on larger principal balances, collecting additional late fees and process management fees
> and avoiding increased fixed overhead costs.

(*Id.* ¶ 88).  Specifically, Plaintiff accuses Defendants of, among other things, failing to permanently

modify the mortgages of individuals who complied with their obligations under the TPP and by

prequalifying borrowers for a permanent loan modification under HAMP or failing to properly and

timely conduct the required prequalification analysis.  (*Id.* ¶ 89).

Defendants now move for a dismissal of this action.  (ECF No. 39-3 ("Ocwen Mov. Br.");

ECF No. 40-1 ("Saxon Mov. Br.").  Plaintiff has opposed both motions (ECF No. 44 ("Pl.'s Saxon

Opp. Br."); ECF No. 45 ("Pl.'s Ocwen Opp. Br.")) and Defendants have replied to same (ECF No.

46 ("Ocwen Reply Br."); ECF No. 47 ("Saxon Reply Br.").  These motions are now ripe for the

Court's adjudication.

## II.     Legal Standard

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 62, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining the

sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the

complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  Additionally, in evaluating a plaintiff's

claims, generally "a court looks only to the facts alleged in the complaint and its attachments

without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### III.    Discussion

Defendants maintain that dismissal is warranted for the following reasons: (1) Plaintiff's claims are barred by the doctrines of judicial estoppel and res judicata; (2) Plaintiff has not pled the existence of the requisite contractual relationship necessary to prove some of Plaintiff's claims; (3) Plaintiff is not permitted to sue for relief under the HAMP as a government program, and; (4) Plaintiff's class claims are time-barred. Because the Court agrees with Defendants that the instant litigation is barred by the doctrine of judicial estoppel, the Court need not address Defendants' remaining arguments for dismissal.

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citations omitted). The doctrine "is designed to prevent litigants from 'playing fast and loose with the courts." *Id.* (quoting *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). "'The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Id.* (quoting 18 Charles A. Wright, et al., Federal Practice and Procedure § 4477 (1981)). However, a court "may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (emphasis added and citations omitted).

With this framework in mind, the Court considers (1) whether Plaintiff has taken irreconcilably inconsistent positions; (2) whether those positions were taken in bad faith; and lastly, (3) whether any sanctions short of dismissal are available to remedy any damage done by Plaintiff's conduct. *See id.*

### 1.   Plaintiff's Inconsistent Positions

Here, Defendants maintain that Plaintiff has taken an irreconcilably inconsistent position as to the present claims by neglecting to raise these claims at any point during the course of her Chapter 13 bankruptcy proceedings. (Saxon Mov. Br. at 12; Ocwen Mov. Br. at 6-7). Given the below history of events leading to Plaintiff's filing of the pending action, the Court agrees that Plaintiff has taken irreconcilably inconsistent positions with regards to the claims now pending.

Plaintiff alleges that Saxon unlawfully denied her requested loan modification on April 6, 2010. (FAC ¶ 68). Approximately five months later, in September 2010, Saxon served Plaintiff with a foreclosure complaint, and Plaintiff filed for Chapter 13 bankruptcy the following month. (*Id.* ¶ 73). In connection with Plaintiff's bankruptcy proceedings, Defendant Saxon filed a proof of claim based on Plaintiff's original, unmodified mortgage. (Saxon Mov. Br. at 6-7). Specifically, Saxon sought pre-petition mortgage arrears and the monthly mortgage payment contemplated by Plaintiff's original loan agreement. *Id.*

Notably, during the approximately five-year period that Plaintiff's bankruptcy proceedings were pending, she never raised any issue with respect to Saxon's claim relating to her mortgage. That is, Plaintiff did not object to Saxon's proof of claim, nor did Plaintiff challenge the validity of the attached original loan documents. (*Id.* at 7). In other words, Plaintiff accepted the representations made by Defendant Saxon that it was entitled to proceeds in bankruptcy in an amount calculated under the original loan documents. Thus, the bankruptcy court confirmed

6

Plaintiff's bankruptcy plan, thereby incorporating Saxon's unopposed claim, on June 3, 2011. (*Id.*). Plaintiff satisfied her Chapter 13 plan in March of 2015. (FAC ¶ 73). About three months later, on May 29, 2015, Plaintiff filed the instant lawsuit in which she alleges that she was contractually entitled to a modification of her original loan with Saxon and seeks, among other relief, "specific performance of Defendants' contractual obligations" under the TPP. (*Id.* at 40). Plaintiff's actions before the bankruptcy court in neglecting to challenge Defendants' claim of entitlement to payment under the terms of the original mortgage, and her instant request that this Court order specific performance of the TPP, are entirely inconsistent.

Moreover, the bankruptcy rules impose a continued obligation on a debtor to disclose all property, including any contemplated causes of action, on a "schedule of assets and liabilities." 11 U.S.C. § 521(a)(1)(B)(i); *See also DePasquale v. Morgan Stanley Smith Barney LLC*, 10-cv-6828, 2011 WL 3703110, *3 (D.N.J. Aug. 23, 2011) ("Plaintiff here had a duty to disclose her claim against Morgan Stanley as soon as she became aware that a possible cause of action existed."). "These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). Accordingly, the "doctrine of judicial estoppel frequently arises in the context of a failure to list a claim as an asset in a bankruptcy, and the inconsistent pursuit of an undisclosed claim." *Clark v. Clark v. Strober-Haddonfield Group, Inc.*, 07-cv-910, 2008 WL 2945972, *2 (D.N.J. July 29, 2008) (citations omitted); *see also Lewis v. Eberle & BCI Serv., LLC*, 11-cv-4661, 2013 WL 4483529, *3 (D.N.J. Aug. 19, 2013). In this case, Plaintiff never listed the pending claims on the schedule of assets and liabilities before the Bankruptcy Court, further evidencing her acceptance of Saxon's representations to that Court.

In light of this information, the Court finds that Plaintiff has indeed taken irreconcilably inconsistent positions as to the mortgage loan. That is, for five years, Plaintiff failed to raise any flags with respect to the validity of Saxon's claims. Then, only a few months after satisfying the bankruptcy plan, Plaintiff filed the instant lawsuit which seeks a finding from this Court that Defendant Saxon was not, in fact, entitled to the proceeds it claimed during the bankruptcy proceedings. Plaintiff's omission of these claims during the entirety of the bankruptcy proceedings is inconsistent with her filing of the instant lawsuit a mere three months after she received an order of discharge.

## 2. Bad Faith

"Asserting inconsistent positions does not trigger the application of judicial estoppel unless 'intentional self-contradiction is . . . used as a means of obtaining unfair advantage.'" *Ryan*, 81 F.3d at 362 (quoting *Scarano*, 203 F.2d at 513). Thus, the Court must consider whether Plaintiff's failure to raise the present allegations before the bankruptcy court was the result "of a good faith mistake rather than as part of a scheme to mislead the court." *Id.* (quotations omitted).

Notably, the Third Circuit has declined to adopt a rule that a debtor's failure to disclose a claim before the bankruptcy court is *per se* evidence of bad faith. *Ryan*, 81 F.3d at 364-65. Rather, the Court should consider the record as a whole to determine whether "an inference of deliberate manipulation could be drawn." *Id.* at 363-65. "A rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003); *see also Ryan*, 81 F.3d at 364-65 (discussing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)).

## A. Plaintiff's Knowledge

The Parties dispute whether Plaintiff was aware of the existence of bases to assert the present claims during the pendency of the bankruptcy action. A cause of action is deemed to be "known" for purposes of disclosure in the bankruptcy proceedings "[i]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action." *Krystal*, 337 F.3d at 323. Here, Plaintiff maintains that "there is no evidence from which the Court may infer that Plaintiff knew she had a claim against Defendants prior to receiving her discharge in bankruptcy." (Pl.'s Saxon Opp. at 9). The record indicates otherwise.

First, the procedural history of this case indicates that Plaintiff was aware of all of the facts underlying the present claims prior to filing a petition for bankruptcy. Specifically, the FAC indicates that the correspondence between Saxon and Plaintiff relating to Plaintiff's loan modification request occurred between August 2008 and July 2010. (*See* FAC ¶¶ 61-72). In September 2010, Saxon served Plaintiff with a foreclosure complaint. (*Id.* ¶ 73). Almost immediately thereafter, in October 2010, Plaintiff filed for relief in the bankruptcy court. (*Id.*). In March 2015 Plaintiff completed her bankruptcy plan. (*Id.* ¶ 74). Finally, three months later, Plaintiff filed the instant action.

In short, Plaintiff would have the Court believe that: (1) throughout the roughly five-year period between Defendants' denial of her loan modification requests and the satisfaction of her bankruptcy plan, Plaintiff was unaware that she may have a cause of action against Defendants, and; (2) during the three-month period following the bankruptcy court's Order of Discharge, she suddenly became apprised that she may have a basis to assert claims against Defendants. Yet Plaintiff has not explained how it is that she only recently learned of the possible causes of action

she now asserts against Defendants. (*See* Pl.'s Saxon Opp. Br. at 5-12).[2]  That is, Plaintiff has failed to rebut the inference of knowledge gleamed from the sequence of events.[3]

Accordingly, the Court finds that Plaintiff had knowledge of the pending claims during the five-year bankruptcy proceedings.  This factor, therefore, militates against Plaintiff and in favor of the application of judicial estoppel.

## B. Motivation to Conceal

Additionally, the record demonstrates that Plaintiff indeed had a motivation to conceal her claims from the bankruptcy court.  As Saxon notes, and Plaintiff does not dispute, "[b]ecause Plaintiff's obligations to creditors exceeded her scheduled assets, significant amounts of her secured and unsecured debts—including her $150,00 second mortgage—were discharged entirely by the final confirmed plan." (Saxon Mov. Br. at 15).  Additionally, among other relief requested in the FAC, Plaintiff seeks actual damages, treble damages, and reasonable attorneys' fees. (FAC at 40).  Certainly, disclosure of these claims, with their accompanying damage regimes, "would have benefited Plaintiff's creditors by enlarging the bankruptcy estate." *DePasquale*, 2011 WL 3703110, *6.

In summary, "[t]his combination of knowledge of the claim and motive for concealment in the face of an affirmative duty to disclose g[ives] rise to an inference of intent sufficient to satisfy the requirements of judicial estoppel." *Ryan*, 81 F.3d at 363.  As Plaintiff has not offered any

---

[2] The Court also notes that during the bankruptcy proceedings, Plaintiff appears to have been represented by at least one of the two attorneys representing Plaintiff in the instant action.

[3] Defendants point out that in an earlier motion to amend the complaint filed before this Court, Plaintiff represented that "[i]t was not until April 2010 that Plaintiff discovered . . . that she may have a basis for an actual claim." (Saxon Mov. Br. at 14 (citing ECF No. 27 at 5).  Defendants urge the Court to consider this statement as further evidence that Plaintiff undoubtedly knew of the possible causes of action six months *before* filing for bankruptcy in October 2010. (*Id.*).  Plaintiff, for her part, argues that this statement made in a prior brief is not a factual assertion for purposes to the pending motion and is not properly before the Court at this time.  Given the order of events in this case, outlined above, the Court need not consider the above statement to find that Plaintiff knew of the possible causes of action she now asserts.

evidence to rebut this inference, the Court finds that, absent the availability of lesser sanctions, judicial estoppel is appropriate.

### C. Availability of Lesser Sanctions

Before a court may apply the doctrine of judicial estoppel, it must determine whether any lesser sanction is available. *Bulger*, 243 F.3d at 779-80.  Here, Plaintiff has not offered any suggested lesser sanction, and Defendant Saxon maintains that "[t]he only lesser sanction available in this case would be requiring Plaintiff to reopen her bankruptcy case in order to pay the now-discharged obligations from any damages Plaintiff recovers here."   (Saxon Mov. Br. at 16). However, were the Court to issue this alternative sanction, "[Plaintiff] would still reap the benefit of any recovery beyond the amount paid to satisfy outstanding debts. In addition, the integrity of both the bankruptcy process and the judicial process would suffer." *Krystal*, 337 F.3d at 325. Accordingly, the Court finds that no lesser sanction is appropriate.

### IV.    Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss Plaintiff's Amended Complaint.  Plaintiff's claims are dismissed with prejudice on the grounds of judicial estoppel.  An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: December 19 2016

JOSE L. LINARES, U.S.D.J.

11